THIGPEN, Judge.
This case involves visitation and custody petitions.
In October 1992, D.B., the maternal grandmother (grandmother) filed dependency petitions in the Family Court of Jefferson County (Alabama court) regarding three of her minor grandchildren, alleging that those children were dependent, and requesting visitation pursuant to Ala.Code 1975, § 30-3-4. The grandmother further filed custody affidavits in compliance with Ala.Code 1975, § 30-3-29, stating that those children resided in Birmingham, Alabama, at the time of the filing of the petition, and that they had lived there five years preceding. The children's father, P.A.T. (father), had custody of the children at the time the grandmother filed the petitions. In her petitions, the grandmother alleged that the father had denied the grandmother visitation with the children since the death of their mother. In December 1992, the grandmother filed a motion for temporary visitation, and the trial court ordered supervised visitation. The court set dates for hearings, which were apparently continued by agreement of the parties. The record contains a letter from the father dated January 11, 1993, releasing his first attorney, as well as that attorney’s motion to withdraw dated January 13, 1993; however, these documents bear no filing stamp and are not recorded on the case action summaries.
The record reveals that A.A., the father’s sister (paternal aunt), who resided in Washington, D.C., filed a petition for custody of the children on January 7, 1993, in the Superior Court of the District of Columbia, Family Division (D.C. court). That petition stated that the paternal aunt did not know of any past or pending proceedings involving the custody of the children, that she did not know of any person claiming a right to custody of the children, and that the mother’s will requested that the paternal aunt be granted custody of her children. The complaint was supported by an affidavit allegedly signed by the father, which stated, inter aha, that the paternal aunt “is the biological mother of’ the children, that the children lived with the paternal aunt and attended school in Washington, D.C., and that the father desired that the paternal aunt be awarded legal custody of the children. In January 1993, the D.C. court entered an order, awarding custody to the paternal aunt and granting visitation to the father.
On January 20, 1993, the grandmother filed amended petitions in the Alabama court, alleging that the father had intentionally violated the orders of the Alabama court by removing the children from the jurisdiction of that court to Washington, D.C., by improperly attempting to transfer custody to the paternal aunt in Washington, D.C., and by failing to have the children present for trial as ordered. The grandmother requested that custody of the children be granted to her.
The Alabama court reset the trial for March 8,1993. The father, represented by a different attorney, filed a motion for continuance or, in the alternative, a motion to dismiss. The grounds for the motion were that the paternal aunt, as custodian of the children pursuant to the D.C. court’s order, was not made a party to the Alabama proceedings, and that she refused to allow the father to take the children to Alabama for the trial.
*908 The Alabama court ordered the father to bring the children to Alabama to appear in court for trial or face contempt charges. The judge further stated that “[the father] went to Washington, D.C. to clearly avoid the jurisdiction of this court. It is to me a sham any way you look at it.”
When the case was called for trial, the father failed to appear or to have the children available as instructed by the court. At the beginning of that proceeding, the Alabama court expressly found the father in civil contempt for failing to appear in court and for failing to bring the children to court. The judge stated on record:
“... this court had ordered on at least one other prior occasion that [the father] have the children present in court, and that order too was not obeyed by [the father] ....
“Subsequent to that, this court set this case for trial and was given what I now believe to be false information about a doctor’s appointment that [the father] had in Washington....
“... in these proceedings today I would find that [the father] is in direct contempt of the orders of this court ... in that he himself did not appear as ordered by this court and he did not produce the children as ordered by this court.”
After ore tenus proceedings, conducted in the absence of the father and the children, the Alabama court entered orders on March 24, 1993, granting detailed visitation to the grandmother, holding the father in contempt, and issuing an attachment against the father. The grandmother’s post-judgment motion was denied. The father appealed and the grandmother cross-appealed.
On appeal, the father contends that the Alabama court did not have jurisdiction to hear the petition after the D.C. court entered its custody order, and that the Alabama court should not have proceeded without the paternal aunt before the court; he further contends that the Alabama court erred in holding him in contempt. On cross-appeal, the grandmother contends that the Alabama court erred in not awarding custody of the minor children to her or to the Jefferson County Department of Human Resources (DHR), and that the Alabama court abused its discretion in not awarding attorney fees to her after finding the father in contempt.
The father contends that the D.C. court entered its custody order prior to the entry of any order by the Alabama court, and that there was no evidence that the D.C. court was aware of proceedings in Alabama at that time. Alabama courts, pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA), must recognize and enforce valid custody judgments of another state. Ala. Code 1975, §§ 30-3-20 to -44; In re Colburn, 497 So.2d 182 (Ala.Civ.App.1986). If, however, the D.C. court did not have proper jurisdiction, its judgment is not entitled to full faith and credit, and it is not mandatory that it be enforced pursuant to the UCCJA. In re Colburn, supra.
We note that Washington, D.C. has adopted the UCCJA, D.C.Code Ann.1981, §§ 16-4501 to -4524, and, for purposes of this case, those provisions are substantially the same as Alabama’s UCCJA. The UCCJA provides the procedure for determining whether a state should assume jurisdiction of a custody matter. First, the court must determine whether it has jurisdiction to act pursuant to § 30-3-23(a). That section, in pertinent part, states:
“(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
“(1) This state:
“a. Is the home state of the child at the time of commencement of the proceeding; or
“b. Had been the child’s home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to five in this state; or
“(2) It is in the best interest of the child that a court of this state assume jurisdiction because:
*909 “a. The child and his parents, or the child and at least one contestant, have a significant connection -with this state; and
“b. There is available in this state substantial evidence concerning the child’s present or future care, protection, training, and personal relationships; or
“(3) The child is physically present in this state and:
“a. The child has been abandoned; or
“b. It is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; ...”
In this case, Alabama undoubtedly had jurisdiction pursuant to the UCCJA as the “home state” of the children at the time the grandmother filed her petition for visitation. Ala.Code 1975, § 30-3-2S(a)(l)a. See also D.C.Code Ann.1981, § 16-4503(a)(l)(A). “Home state” is defined as “[t]he state in which the child, immediately preceding the time involved, lived with his parents, a parent, or a person acting as parent, for at least six consecutive months.” Ala.Code 1975, § 30-3-22(5). See also D.C.Code Ann.1981; § 16-4502(5). The record indicates that the children, ages 10, 8, and 2 at the time the grandmother’s petition was filed, were lifelong residents of Birmingham, Alabama. The children were not removed to Washington, D.C. until after the Alabama petition was filed and the case was set for trial. Therefore, their physical presence in Washington, D.C. at that time did not deprive the Alabama court of “home state” jurisdiction.
Furthermore, the Alabama court clearly had jurisdiction pursuant to Ala.Code 1975, §§ 30-3-23(a)(2)a. and b. The children, the father, and at least one contestant — the grandmother — “have a significant connection with this state.” Additionally, “[tjhere is available in this state substantial evidence concerning the [children’s] present or future care, protection, training, and personal relationships.” See also D.C.Code Ann.1981, §§ 16-4503(a)(2)(A) and (B).
The children had lived in Alabama with their parents during their entire lives, two of the children were enrolled in school in Alabama, and the children attended church and day care in Alabama. Both the father and the grandmother, as well as other maternal relatives, also lived in Alabama, and therefore, there is substantial evidence in Alabama concerning the children to assist the court in making a custody determination. Several witnesses testified on behalf of the father and the grandmother, further indicating the abundance of evidence available in Alabama to assist in making a custody determination. Additionally, there is evidence in the record that as a result of abuse allegations, DHR had been involved in evaluating the children. It appears to this court that the best interests of these children are served by the Alabama court’s assuming jurisdiction, because of the family’s connections with this state and because of substantial evidence available in this state “concerning the [children’s] present or future care, protection, training, and personal relationships.” Ala. Code 1975, § 30-3-23(a)(2)b.
The father’s only argument that the D.C. court had jurisdiction is that the children were present in that jurisdiction at the tíme the paternal aunt’s petition was filed, and that there was an emergency situation in that the children had “been subjected to or threatened with mistreatment or abuse.” Ala.Code 1975, § 30-3-23(a)(3)b. See also D.C.Code Ann.1981, § 16-4503(a)(3)(B).
We are compelled to note that one major purpose of the UCCJA is to prevent abductions or removal of children from a court’s jurisdiction in order to obtain a more favorable custody determination in another jurisdiction. Ala.Code 1975, § 30-3-21(a)(5); Bloodgood v. Whigham, 408 So.2d 122 (Ala.Civ.App.1981). See also D.C.Code Ann.1981, § 16-4501. Here, the Alabama court specifically found that the father intentionally removed the children to Washington, D.C. to avoid the jurisdiction of the Alabama court, and the evidence supports that finding. It is clear from the record that the father has accomplished exactly what the UCCJA seeks to prevent, and we will not construe the UCCJA to allow the father to accomplish this *910 objective. See Ex parte Izundu, 563 So.2d 1042 (Ala.Civ.App.), writ denied, 568 So.2d 771 (Ala.1990). We will not allow contestants to thwart the purposes of the UCCJA by removing the children to another jurisdiction and making an allegation of abuse to create jurisdiction in another court on the ground of an “emergency.” Therefore, we find that the D.C. court did not have jurisdiction pursuant to the “emergency” provision of the UCCJA.
Next, even where a state has jurisdiction, the UCCJA authorizes a trial court to decline jurisdiction in certain situations. Ala. Code 1975, § 30-3-26(a), provides that a court shall not exercise jurisdiction “if at the time of filing the petition a proceeding concerning the custody of the [children] was pending in a court of another state exercising jurisdiction substantially in conformity with this article.” See also D.C.Code Ann.1981, § 16-4506(a). Here, the proceeding in Alabama was pending at the time the D.C. petition was filed. While the grandmother did not amend her petition to request custody until after the D.C. court order was entered, she filed a dependency petition requesting visitation pursuant to Ala.Code 1975, § 30-3-4, in the Alabama court prior to the removal of the children to Washington, D.C., and prior to any order being entered by the D.C. court. A “custody determination” as defined by the UCCJA includes visitation rights, Ala. Code 1975, § 30-3-22(2), and a “custody proceeding” as defined by the UCCJA includes dependency proceedings, Ala.Code 1975, § 30-3-22(3). Therefore, the grandmother’s initial petition falls within the UCCJA definition of a “custody determination,” and a “custody proceeding” was pending in Alabama at the time that the paternal aunt filed her petition in the D.C. court. See also D.C.Code Ann.1981, §§ 16-4502(1) and (2).
The D.C. court could have declined jurisdiction because it was an inconvenient forum. Ala.Code 1975, § 30-3-27(a), provides that a court may decline to exercise its jurisdiction over a child custody proceeding “if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the ease and that a court of another state is a more appropriate forum.” See also D.C.Code Ann.1981, § 16^4507(a). The decision to decline jurisdiction is discretionary, and the UCCJA enumerates several factors that a trial court may consider in deciding whether it is in the children’s best interests that another state assume jurisdiction. Ballard v. Ballard, 444 So.2d 872 (Ala.Civ.App.1984). These factors include: whether another state is or recently was the children’s home state; whether another state has closer connection with the children, the family, and one or more contestants; whether evidence concerning the child’s care, protection, training, and personal relationships is more available in another state; and whether exercise of jurisdiction would contravene any of the purposes of the UCCJA. Ala.Code 1975, § 30-3-27(c)(l), (2), (3), and (5). See also D.C.Code Ann.1981, § 16-4507(c)(1), (2), (3), and (5). Consideration of these factors clearly indicates that Alabama is the more appropriate forum, and the D.C. court could and, under the facts of this case, should have declined jurisdiction. Additionally, Ala.Code 1975, § 30-3-28(a), provides that a court may decline to exercise jurisdiction if it finds that the petitioner “has wrongfully taken the child from another state or has engaged in similar reprehensible conduct.” See also D.C.Code Ann.1981, § 16-4508(a).
The father also contends that, because the D.C. court issued its custody order prior to the Alabama court’s order, the D.C. court’s order should be enforced by the Alabama court pursuant to the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A. The PKPA and the UCCJA govern questions of jurisdiction in interstate child custody eases. In areas of conflict between the two statutes on matters of jurisdiction, the PKPA prevails. Blankenship v. Blankenship, 534 So.2d 320 (Ala.Civ.App.1988). Alabama courts are required by the PKPA to extend full faith and credit to a sister state’s child custody determination which was rendered consistently with the federal act. Mitchell v. Mitchell, 437 So.2d 122 (Ala.Civ.App.1982). If, however, the D.C. order did not comply with the PKPA, enforcement of that order is not mandatory. Mitchell, supra. Every state is required to enforce “any child custody determination *911 made consistently with the provisions of this section by a court of another State.” 28 U.S.C. § 1738A(a) (emphasis added). That section further provides that a child custody determination is consistent with the provisions of this section only if “such court has jurisdiction under the law of such State.” 28 U.S.C. § 1738A(c)(l). As noted previously, the D.C. court did not have jurisdiction over this matter pursuant to the UCCJA, and, for purposes of this case, the PKPA provisions are not inconsistent with the UCCJA. Therefore, the D.C. court’s order did not comply with the PKPA, and it is not entitled to full faith and credit.
Based upon the foregoing, it is clear that the Alabama court had jurisdiction of this proceeding; however, it failed to make any custody determination, and such was error. Accordingly, this case must be reversed and the cause remanded for the Alabama court to make a proper custody determination.
The father further asserts that the Alabama court failed to provide notice to the paternal aunt in compliance with the UCCJA. Ala.Code 1975, § 30-3-24, states that “reasonable notice and opportunity to be heard shall be given to ... any person who has physical custody of the [children].” The children were not in the physical custody of the paternal aunt at the time that the grandmother’s petition was filed; however, the Alabama court later became aware of the D.C. court proceeding, and aware that the paternal aunt had physical custody of the children. The UCCJA imposes upon the parties “a continuing duty to inform the court” of any custody proceedings elsewhere. Ala.Code 1975, § 30-3-29(c). When the court obtains such information of a non-party having physical custody of the children, “it shall order that person to be joined as a party and to be duly notified of the pendency of the proceeding and of his joinder, as a party.” Ala.Code 1975, § 30-3-30.
The father’s attempt to challenge the Alabama court’s jurisdiction because of lack of notice to the paternal aunt is without merit. He does not have standing to assert the rights of a third party allegedly injured by lack of notice. Ex parte Izundu, 568 So.2d 771 (Ala.1990). Additionally, we have previously noted that these children were obviously taken to Washington, D.C. to avoid the jurisdiction of the Alabama court. It further appears that the paternal aunt possibly acted in collusion with the father in order to deceive the D.C. court regarding the status of the children and regarding the pending proceedings in the Alabama court. As stated previously, we cannot construe the UCCJA to allow contestants to defeat its purposes. Accordingly, we find no error in the trial court’s failure to provide notice to the paternal aunt.
The father’s second issue is whether the trial court erred in holding him in contempt. The father, contrary to Rule 28(a)(5), A.R.App.P., has cited absolutely no authority to support this contention. Notwithstanding that failure, our review of the record reveals evidence to support a finding that the father willfully disobeyed the direct orders of the Alabama court on several occasions, and we find no abuse of discretion by the trial court in finding the father in contempt. Therefore, we will not disturb the judgment of the trial court as to this issue.
On cross-appeal, the grandmother first contends that the trial court erred in not making a custody determination on her amended petition. She requests that we remand this cause to the trial court for entry of an award of custody to her or to DHR. Inasmuch as we have determined that the Alabama court has jurisdiction and that it erred in failing to make a custody determination, we will not address this issue.
The grandmother further argues that the trial court erred in not awarding her attorney fees after finding the father in contempt. The grandmother requested an award of attorney fees at trial, and her attorney testified regarding additional expenses incurred as a result of the father’s contempt. The trial court denied her post-judgment motion, which, in part, also requested such an award. The grandmother offers no authority to support her argument, and therefore, we affirm the trial court’s judgment as to this issue. Rule 28(a)(5), A.R.App.P. In doing so, however, we note that whether to award attorney fees in a contempt proceeding is a *912 discretionary matter. Moody v. State ex rel. Payne, 355 So.2d 1116 (Ala.1978).
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and YATES, J., concur.